### IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

# AT MILLEDGEVILLE,

### NOVEMBER TERM, 1853.

Present—JOSEPH H. LUMPKIN,   ⎫
      EUGENIUS A. NISBET, ⎬Judges.
      EBENEZER STARNES,  ⎭

---

No. 50.—MILTON G. ROBERT, plaintiff in error *vs.* GEORGE
    W. PALMER, Adm'r, &c. defendant in error.

[1.] Under the Laws of Georgia, giving " Head rights", a warrant containing
no description whatever of the land intended to be surveyed, except " 50
acres lying in Wilkes county" is insufficient.

[2.] Such a warrant cannot be amended when the Caveat comes up to be
heard in the Superior Court.

[3.] The Superior Courts have original and exclusive jurisdiction in the trial
of land caveats, as they have in all other cases respecting the titles to land.

[4.] The proper procedure prescribed for the trial of caveats to land-war-
rants in this State.

    Caveat to Grant in Wilkes Superior Court. Tried before
Judge BAXTER, March Term, 1853.

Milton G. Robert *vs.* George W. Palmer.

This was a Caveat to the application for a grant under the land laws, giving " Head-rights" to vacant lands.

Upon the trial, the applicant who is plaintiff in error, offered in evidence a land warrant of which the following is a copy :

GEORGIA :

To THOMAS W. CALLOWAY, *Surveyor for Wilkes county— Greeting :*

You are hereby authorized and required to admeasure and lay out, or cause to be admeasured and laid out, to Milton G. Roberts, a tract of land which shall contain fifty acres in said county of Wilkes, taking special care that the same has not been heretofore laid out to any person or persons whatsoever ; and you are hereby also required to record the plat of the same in your office, and transmit a copy thereof together with this warrant to the Surveyor General within two years from this date.    Given under our hands, this 6th day of August, 1850.

EPHRAIM BAILEY, J. P.

F. H. ADAMS, J. P.

BENJ. B. HARDIN, J. P.

Attest, BOYLAND BEASLEY, *Clerk.*

To which warrant counsel for caveators objected, on the ground that it was void, because it did not set forth the "buttings" of the land alleged to be vacant.    The Court sustained the objection, and this is the first error assigned.

Counsel for applicant then proposed to amend the warrant, by inserting the boundaries, and stated in support thereof, that he requested the Land Court to insert these boundaries, which they refused to do.    The Court refused the application to amend, and this decision is assigned as error.

GARTRELL for plaintiff in error.

TOOMBS & REESE for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] Was the warrant valid, setting forth as it did, no other de-

scription of the land on which it was intended to be located, than that it contained " Fifty acres in the county of Wilkes" ? We think not. By the act of 1783 (*Cobb's Digest* 667) it is required that the warrant to survey land under Head-rights shall " Describe the buttings and boundings of the land as particularly as may be." And again, by the same Statute, it is made the duty of the Clerk " To keep a regular book of entries of all applications made and warrants issued, *specifying the buttings and boundings of the lands contained in the same.*" (*Ibid* 668.) We hold then, that the objection to the sufficiency of the warrant was well taken and properly sustained by the Court. We would not be understood as holding that this uncertainty in the warrant would vitiate a grant, which either sets out upon its face a description of the land, or refers to the plat for that purpose.

[2.] Was the defect amendable ? Most clearly not. The issuing of the warrant by the Land Court was like the suing out of an attachment before a magistrate, an *ex parte* preliminary proceeding, and constitutes no part of the pleadings in the cause; and consequently does not fall within any of the Statutes of *jeofails* or amendatory acts passed by the Legislature of this State.

Nor is the excuse rendered for the irregularity of the warrant available, namely : that the applicant requested the Land Court to specify in the warrant the boundaries of the land, which they refused to do. Mr. Roberts could by *mandamus* or otherwise, have compelled the Land Court to grant a legal warrant. He must be presumed, therefore, to have taken voluntarily the one which was issued.

Much contrariety of opinion seems to exist as to the procedure for the trial of caveats, against the passing of grants for land, under Head-rights in this State.

Originally, under the Act of 1783, a trial was had in the Land Court by a jury of twelve men, being free-holders, who were duly sworn to try the matter according to Law and Equity, and give their verdict thereon, which was final and conclusive. (*Cobb's Digest* 666.)

By the 10th section (erroneously cited as the *ninth* in *all* the Digests) of the Act of 1784, for laying out the counties of Franklin and Washington, appeals were allowed in *all cases,* from the decision in the Land Courts, upon caveats to the Governor and Executive Council, or to the President of the Council for the time being in Council.   (*Watkins' Digest,* 293.)

And by the second section of the Act of 1789, the Governor alone is empowered to try appeals on caveats.   (*Watkins' Digest,* 407.)

Thus stood the Law in 1836.   On the 24th Dec. of that year, the Legislature passed an act "To repeal the *ninth* section, and all other parts of laws now in force in this State, by which caveats are directed to be tried where land is sought to be granted, before the Governor, and directing such caveats to be tried in the Superior Court of the county in which the land lies."

" Sec. 1.  The *ninth* section of the Act of 1785, and all other laws or parts of laws allowing caveats entered by parties claiming grants for lands to be tried by the Governor of this State be, and the same is and are hereby repealed."

" Sec. 2.  All caveats or appeals entered against the granting of any tract of land which has heretofore been directed to be tried by the Governor and Council, or the Governor, be and the same shall hereafter be returned to the Superior Court of the County where the land may lie ; and the said Court shall submit the same to a jury with the evidence, in the same manner, and under the same rules of law as are usual in all cases for the trial of the titles to land ; and the verdict of the jury shall be final and conclusive ; and the record of said trial and verdict being transmitted to the Governor, he shall issue a grant to the party in whose favor the same may be."   (*Cobb's Digest* 679.)

I need not say that this Statute bears on its face conclusive evidence of the most careless legislation.   It repeals the *ninth* section of the Act of 1785, instead of the *tenth* section of the Act of 1784, the one intended.   But passing by this inadvertence, as well as the looseness of language used in the second

section, what is the proper construction to put upon the Act? Were I asked to state in good faith and conscience what the Legislature of 1836 intended to effect by this Act, I should be constrained to answer, to transfer the trials of appeals *on* caveats from the Governor to the Superior Courts. The whole law, and especially the title, authorizes this conclusion. But this construction would still require the first trial to be had in the Land Court, as provided for by the Act of 1783, giving to the Superior Court appellate jurisdiction only in the cause.

[3.] But by the Constitution of 1798, the Superior Courts are vested with *exclusive* jurisdiction in *all* cases respecting titles to land. It will be perceived, therefore, that if the special Land Court is ousted of all jurisdiction by virtue of this subsequent constitutional provision, and the Superior Court can exercise only appellate jurisdiction, that such a construction of the Act would render it wholly nugatory. It would be valid only to take away from the Governor all jurisdiction over these Land caveats, and for no other purpose whatever.

Now while I admit that the words of a Statute are to be taken in the sense in which the Law-makers probably meant them to be taken, yet it must not be forgotten that Courts are bound so to construe an act that it may be made to operate, rather than be inefficient.

[4.] In view of all the difficulties which surround this subject, and in order to give to the people and the Courts a plain and intelligible rule for their guidance, we submit the following as the mode of procedure : Applications for warrants to survey vacant lands under Head-rights, are made to the Land Courts of the respective counties, and issued as heretofore, and placed in the hands of the County Surveyor. All caveats are entered in the office of the County Surveyor, whose duty it is to return the same to the Superior Court of the county where the land lies ; and the same shall be docketed and tried in the same manner as is usual in all cases for the trial of titles to land. Thus giving to the Superior Courts original, instead of appellate jurisdiction, and thereby avoiding the constitutional difficulty already suggested, and at the same time preserving

the symmetry of our system, by allowing a first and second jury trial.

Judgment affirmed.