## 74389. SIMMONS et al. v. SELECT INSURANCE COMPANY.
(358 SE2d 288)

BIRDSONG, Chief Judge.

Select Insurance Company issued a garage insurance policy to Frank C. Simmons, d/b/a Everready Service Garage, for the period July 1, 1984 through July 1, 1985. On March 3, 1985, Debra Sue Sasser parked her car in a no-parking zone while having dinner at a restaurant across the street. Her car was towed by a wrecker from the Everready Garage and was damaged in transit. When she went to the garage to claim her car, she was advised of the damage, that there would be no towing costs, and the owner said if she would get a "fair" estimate he would give her a check for that amount. Ms. Sasser obtained an estimate for damages to the right and left sides of her car and presented it to Simmons. Simmons had not seen the damage to her car when it was brought in and the wrecker driver was not then present, so he gave Ms. Sasser a check in the amount of the estimate, $592.07. Sasser deposited the check in her account and proceeded to write checks against the amount deposited. Shortly after Sasser left the garage, the wrecker driver returned and told Simmons that he had damaged only the right side of Sasser's car. Simmons stopped payment on his check and did not advise Sasser of the stoppage. Sasser's checks were returned by her bank for insufficient funds and she returned to talk to Simmons. Sasser claimed her car was damaged on both sides by the towing, but Simmons would only pay for the damage on the right side. Sasser said she had "checks that had to be covered, and [she] wasn't going to argue with him." Sasser accepted a check in the amount of $454.07 and went to see her lawyer. Simmons said Sasser admitted the damage to the left side of her car was done prior to the towing and accepted the smaller amount in full settlement of damages to her car.

Sasser filed an action against Simmons and Everready on May 19, 1985. On June 17, 1985, Simmons notified his insurance carrier, Select Insurance Company, about the towing incident. Select then filed this declaratory judgment action to ascertain whether it was required to defend Simmons and Everready in the Sasser action, and whether Simmons had forfeited his insurance coverage. Select contends Simmons and Everready forfeited coverage under the policy because of their failure to comply with the policy provisions of notification to the insurer of a covered incident, and by his voluntary assumption of liability, and payment to a claimant. Select moved for and was granted summary judgment, and Simmons brings this appeal. *Held*:

1. The appellant enumerates as error the grant of appellee's motion for summary judgment. The insurance policy provided, inter alia, that "[n]o insured shall, except at his or her own cost, voluntarily

make any payment, assume any obligation or incur any expense." Further, under liability coverage, the policy provided that "[t]his insurance does not apply to: 1. Liability assumed under any contract or agreement. . . ."

In the instant appeal, the insured voluntarily agreed to assume liability for his employee's act which damaged Ms. Sasser's car while being towed to his garage. The agreement accepting liability, and the subsequent voluntary payment of the amount of the estimate to Ms. Sasser, were in direct contravention of policy provisions. The policy also provided that no action would lie against the company unless there had been full compliance with the terms of the policy.

Competent parties are free to choose, insert, and agree to whatever provisions they desire in a contract, including insurance contracts, unless prohibited by statute or public policy. *Donaldson v. Pilot Life Ins. Co.*, 177 Ga. App. 748, 749 (341 SE2d 279). The provisions cited above are neither prohibited by statute nor public policy. Hence, the insured failed to comply with his policy provisions not to assume liability or make voluntary payments to claimants. Accordingly, under the policy his actions were not covered and the insurer is not responsible for the amount represented by the voluntary payment. *Jones v. State Farm &c. Ins. Co.*, 100 Ga. App. 727, 729 (112 SE2d 323).

2. Appellants contend the trial court erred in granting appellee's motion for summary judgment "as questions of fact exist arising from ambiguous provisions in the insurance policy" regarding appellee's "duty to defend" appellants for his actions arising from the "stop payment order." They argue that any damages resulting from the stop payment order "were 'accidents' as defined by the insurance policy because they were unintentional and unexpected." Appellants allege Simmons was unaware of the possible consequences of his stop payment order and that he did not intend any inconvenience to Ms. Sasser, but thought the bank would notify her he had stopped payment on her check.

The insurance policy defines "accident" as "continuous or repeated exposure to the same conditions resulting in bodily injury or property damage the insured neither expected nor intended." "Bodily injury" was described as "bodily injury, sickness or disease including death," and "property damage" as "damage to or loss of use of tangible property." The policy also provided that the insurer had "no duty to defend suits for bodily injury or property damage not covered by this policy."

" 'Insurance is a matter of contract, and the language used is to be accorded its general and ordinary meaning, bearing in mind that the contract is to be construed in accordance with the intention and understanding of the parties, and, in construing it, the court can go

no further than a fair construction of the language used will permit.' " *Guest v. Horace Mann Ins. Co.*, 168 Ga. App. 714, 715 (310 SE2d 241). An insurance policy is to be construed liberally in favor of the object to be accomplished. Its provisions will be construed against the insurer when a part is susceptible of two constructions and a court will adopt that interpretation which is most favorable to the insured. However, if the language is unambiguous and but one reasonable construction is possible, the court will enforce the contract as written. *Donaldson,* supra at 749. Interpretation of policy provisions which are plain and definite is a matter of law for the trial court, and a policy provision " 'is not ambiguous even though presenting a question of construction, unless and until an application of the pertinent rules of construction leaves it uncertain as to which of two or more possible meanings represents the true intention of the parties.' " *Brown v. Peninsular Fire Ins. Co.*, 171 Ga. App. 507, 508 (320 SE2d 208).

We find the contract provisions, referred to in this appeal, to be plain and unambiguous. And, pretermitting the issue of whether the alleged results of the stoppage of payment on the check by Simmons were unexpected and unintended, this particular element is but one of the several elements of "accident" as defined by the policy. First, the single instance of stoppage of payment on one check did not involve "continuous or repeated exposure to the same condition. . . ." Further, there was no resultant "bodily injury" ("bodily injury, sickness or disease including death"), or "property damage" ("damage to or loss of use of *tangible* property") (emphasis supplied), as defined and restricted by the unambiguous terms of the insurance policy.

Accordingly, appellant's claim that the stoppage of payment on the check was an "accident" is without merit. The policy did not include coverage for "bodily injury or property damage not covered by this policy." Hence, stoppage of payment upon a check the insured issued in violation of the terms of the policy is not reasonably susceptible of being construed as an "accident" as that term is defined in the policy. The trial court did not err in granting summary judgment to the insurer.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED MAY 28, 1987.

*Steven E. Scheer, Henry P. Smith,* for appellants.
*Albert N. Remler, Richard M. Scarlett,* for appellee.