**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 30, 2012**

# In the Court of Appeals of Georgia

A12A1094. BELL et al. LIBERTY MUTUAL FIRE INSURANCE COMPANY

PHIPPS, Presiding Judge.

Ernest and Iris Bell appeal from a trial court order granting Liberty Mutual Fire Insurance Company's motion for entry and approval of certain appraisal awards determined by an umpire and denying the Bells' motion to set aside those same awards, which were for less than the limits of their homeowner's insurance policy with Liberty Mutual. The Bells contend that the trial court should have set aside the awards because the forms of the awards were improper, and thus, there was irregularity, a palpable mistake of law, or fraud in the issuance of the awards. The Bells also contend that the trial court erred in not finding that they were entitled to the maximum amount of coverage set forth in their insurance policy pursuant to a

particular statute, and in not finding that Liberty Mutual denied their claim in bad faith. Finding no error, we affirm.

After their home was damaged by fire on April 26, 2008, the Bells submitted a claim to Liberty Mutual to recover the policy limits for the loss of their dwelling and personal property. Liberty Mutual disputed the amount of the claim. Pursuant to the terms of the policy, the matter was submitted to two appraisers and to an umpire, to determine the actual value and amount of loss.

While the appraisal process was ongoing, the Bells filed in superior court a complaint for damages, seeking, among other things, to be paid the policy limits of their fire insurance policy for the loss of their dwelling and loss of personal property. Liberty Mutual filed an answer and asserted defenses, denying liability and disputing the amount of the claim. Litigation was stayed pending the completion of the appraisal process.

In August 2010, the umpire issued awards for the loss of the dwelling and the loss of personal property in amounts less than the policy limits, and Liberty Mutual assented to the awards.[1] The stay on the litigation was lifted. Liberty Mutual filed in

_____

[1] The umpire also issued an award for additional living expenses. The Bells do not dispute the award for additional expenses, which, according to the policy, covered the necessary increase in living expenses they incurred so that their household could

the trial court a motion for entry and approval of the awards; the Bells filed a motion to set aside the awards for the loss of the dwelling and the loss of personal property. The trial court issued an order granting Liberty Mutual's motion; denying the Bells' motion; and ordering that the umpire's awards constituted the appropriate measure of damages. From this order, the Bells appeal.

> An appraisement award is the result of a contractual method of ascertaining the amount of loss, and it is binding on the parties as to the amount of loss unless the award is set aside. There exists a presumption in favor of the regularity and fairness of appraisement awards, and it is difficult to set them aside. While an award may be attacked for any reason that would void a contract, as well as for fraud in the arbitration or in either party in obtaining the award, for a palpable mistake of law or for deciding any matter by chance or lot, where there is no evidence of fraud, oppression, irregularity, or unfairness, other than on the disputed issue of value, and no other circumstances tending to raise the issue, a verdict in the amount of the award is demanded.[2]

maintain its normal standard of living.

[2] *Southern Gen. Ins. Co. v. Kent*, 187 Ga. App. 496, 497 (1) (370 SE2d 663) (1988) (citations omitted); see *Pacific Nat. Fire Ins. Co. v. Beavers*, 87 Ga. App. 294, 298-301 (4) (73 SE2d 765) (1952).

An appellate court will not interfere with the report of appraisers when the question of quantum of the judgment is the subject of review, to correct the amounts reported, except in case of gross error showing prejudice, corruption or plain mistake.[3]

1. The Bells contend that the forms of the umpire's awards were improper because the umpire failed to include in the awards a list of damage or loss to any specific articles of personal property or components of the house. They argue that because that was not done, there was irregularity, a palpable mistake of law, or fraud committed by the umpire in his entry of the awards.

(a) The Bells do not contest that the insurance policy between them and Liberty Mutual ("homeowner's policy") did not require such itemization. They assert that their policy must be construed so as to conform to the state standard fire policy.[4] In that regard, the Bells argue that the standard policy applied to this case and required such itemization, and that the umpire's failure to itemize in accordance with the standard policy rendered the forms of the awards improper and invalid due to irregularity, a palpable mistake of law, or fraud committed by the umpire in his entry of the awards.

---

[3] *Dept. of Transp. v. Driggers*, 150 Ga. App. 270, 274 (257 SE2d 294) (1979).

[4] See OCGA § 33-32-1 (a); Ga. Comp. R. & Regs. r. 120-2-19-.01.

The standard policy pertinently provides:

The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of [umpire and one appraiser] when filed with [Liberty Mutual] shall determine the amount of actual cash value and loss.[5]

The term "item" is not defined in the standard policy. And the parties have not cited, nor have we discovered, any Georgia authority interpreting the requirement to itemize. The Bells assert that because the standard policy specifies that an *insured* must "furnish a complete inventory of destroyed, damaged and undamaged personal property, showing in detail quantities, costs, actual cash value and amount of loss claimed,"[6] then "[n]o lesser burden can possibly be placed on the umpire." But we are not convinced that the language of the standard policy in Georgia requires that the umpire itemize as the Bells describe. The pertinent language in the standard policy concerning what the umpire must do simply does not explicitly place such a duty on the umpire as it does on the insured; nor does the policy between the Bells and Liberty Mutual require such itemization.

---

[5] Ga. Comp. R. & Regs. r. 120-2-19-.01.

[6] See Ga. Comp. R. & Regs. r. 120-2-19-.01.

5

To support their position, the Bells rely on *Kacha v. Allstate Ins. Co.*,[7] but that case is distinguishable. There, the judge instructed the homeowners (whose house had been damaged by heat and smoke in a wildfire) and the company that insured the home to agree as to a form for the award, and the parties agreed that the award would include a listing of specific items, e.g. kitchen cabinets, flooring, garage cabinets, carpet, and interior walls.[8] Liberty Mutual, however, relies upon cases from multiple jurisdictions, interpreting in its favor clauses similar to the one at issue in this case. In those cases, the courts held that the term "item" in the appraisal provisions referred to the "items" listed on the faces of the policies, rather than to all the constituent elements of damage giving rise to the total loss.[9] For instance, in *Commercial Union Ins. Co. v. Ryals*,[10] the appraisal panel looked to the "Coverage" provision of the policy and determined that since there was only one item referred to – "Building(s)"

---

[7] 140 Cal. App. 4th 1023 (45 Cal. Rptr. 3d 92) (2006).

[8] Id. at 1027-1028.

[9] *Mitchell v. Aetna Casualty & Surety Co.*, 579 F.2d 342, 351 (5th Cir. Miss. 1978); *Arkin Distributing Co. v. American Ins. Co.*, 85 Mich. App. 359, 363-364 (271 NW2d 430) (1978); *Commercial Union Ins. Co. v. Ryals*, 355 So. 2d 684, 686-687 (Ala. 1978); *Phoenix Assurance Co. v. Singer*, 331 F.2d 10, 12 (8th Cir. Mo. 1964).

[10] Supra.

6

– an itemized account of the components which made up the damaged building was unnecessary; it was proper for the appraisers to compute the loss to the building as one item.[11]

Here, the umpire entered three awards – for additional living expenses, for personal property, and for real property. As to the personal property and real property awards, the umpire stated separately the actual cost value, the total depreciation, and the replacement cost value. Indeed, in the "Coverage" section of the homeowner's policy, personal property and real property (dwelling) were items for which coverage was provided.

> Competent parties are free to choose and insert whatever provisions they desire in a contract, unless prohibited by statute or public policy. . . Yet a contract of insurance should follow the cardinal rule of construction so as to carry out the true intention of the parties, and their rights are to be determined by the terms of the contract. Its language should receive a reasonable construction and not be extended beyond what is fairly within its plain terms. . . It is the function of an appellate court to construe the contract as written, and we will not, by construction, create a liability not assumed by the insurer, nor delete a

---

[11] Id.

coverage contracted for, and we are not authorized to make a new contract for the parties, or one different from that plainly intended.[12]

In the absence of an explicit provision in the standard policy directing the umpire to perform the same itemization as the insured is directed to perform under the standard policy, we see no error in the trial court's failure to impose upon the umpire a duty for which the parties had not specifically contracted.[13]

(b) The Bells' contention that there was irregularity, palpable mistake of law, or fraud committed by the umpire in his issuance of the awards is based on their claim that the forms of the umpire's awards were improper. Based on our holding in Division (1) (a),[14] that contention is moot.

2. The Bells contend that the trial court erred in not finding that, pursuant to OCGA § 33-32-5, they were entitled to the maximum amount of coverage set forth in their policy because their home was wholly destroyed.

OCGA § 33-32-5 pertinently provides:

---

[12] *Donaldson v. Pilot Life Ins. Co.*, 177 Ga. App. 748, 749 (341 SE2d 279) (1986) (citation and punctuation omitted).

[13] See id.

[14] Supra.

8

(a) Whenever any policy of insurance is issued to a natural person or persons insuring a specifically described one or two family residential building or structure located in this state against loss by fire and the building or structure is wholly destroyed by fire without fraudulent or criminal fault on the part of the insured or one acting in his behalf, the amount of insurance set forth in the policy relative to the building or structure shall be taken conclusively to be the value of the property . . . (b) Subsection (a) of this Code section shall not apply where: (1) The building or structure is not wholly destroyed by fire. . . .

In their appellate brief, the Bells assert that "unquestionably, [their] house has now been wholly destroyed as a result of the fire, as a result of Liberty Mutual's refusal and failure to timely pay their claims and the Bell's inability to rebuild or protect the property ruins." The umpire, however, determined that the house was not wholly destroyed during the fire. But the trial court did not rule on this issue, and therefore nothing is presented for our review.[15]

3. The Bells contend that the trial court erred in not finding that Liberty Mutual denied their claim in bad faith, pursuant to OCGA § 33-4-6. The Bells assert that the record shows that Liberty Mutual chose to omit a "statutorily and contractually required provision in its homeowners' insurance policy, to the detriment and unfair

_____

[15] See *Willingham v. Willingham*, 261 Ga. 674, 675 (2) (410 SE2d 98) (1991).

9

prejudice of the holders of its policy," and that "[a]n award of bad faith damages and penalties by a jury would be authorized."

> To support a cause of action under OCGA § 33-4-6, the insured bears the burden of proving that the refusal to pay the claim was made in bad faith. A defense going far enough to show reasonable and probable cause for making it, would vindicate the good faith of the company as effectually as would a complete defense to the action. Penalties for bad faith [and attorney fees] are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact.[16]

The trial court did not rule on this issue, and therefore nothing is presented for our review.[17]

In any event, the Bells fail to state the particular statutory or contractual provision they contend Liberty Mutual intentionally omitted from the homeowner's policy. To the extent that they are referring to the provision in the standard policy that called for an award to be itemized, based on our holding in Division (1) (a), we

---

[16] *Rice v. State Farm Fire & Casualty Co.*, 208 Ga. App. 166, 169 (1) (430 SE2d 75) (1993) (citation and punctuation omitted).

[17] *Willingham*, supra.

discern no detriment or unfair prejudice to the Bells because the homeowner's policy did not include that provision.

*Judgment affirmed. Ellington, C. J., and Dillard, J., concur.*